Points decided.

(December 19, 1903.)

## JACK v. VILLAGE OF GRANGEVILLE.

[74 Pac. 969.]

TOWNS AND VILLAGES—WATER SUPPLY—WATER CORPORATIONS—FREE WATER—PERSONS—ESTABLISHMENT OF WATERWORKS BY INDIVIDUALS—RATES TO BE CHARGED FOR WATER—THIRTY YEAR CONTRACTS—CONSTITUTIONALITY OF ACT.

1. Sections 2710, 2711 and 2712, Revised Statutes, apply only to corporations and have no application to individuals or private persons.

2. Subdivision 12, section 2230, Revised Statutes, was not repealed by an act entitled "An act to provide for the organization, government and powers of cities and villages," approved March 4, 1893, Session Laws of 1893, page 97, as it is not in conflict therewith.

3. *Held*, that the ordinances and contract under consideration are not in conflict with the Laws of 1887, or the act of 1893.

4. The manner in which rates are to be charged by a water company corporation for the use of water is fixed by the provisions of section 2711, Revised Statutes, but the legislature has failed to provide by law, as required by section 6, article 15, state constitution, the manner in which reasonable maximum rates may be established for water furnished a town or village by an individual.

5. In the enactment of the laws concerning cities and towns and villages the legislature has provided that such municipal corporations may erect waterworks or purchase water for fire purposes and other public necessities.

6. Where a city or town is given power to establish a water system of its own, it may contract with private individuals or persons for the establishment of a water system and purchase water from them.

7. Under section 6, article 15, state constitution, it is the duty of the legislature to provide by law the manner in which reasonable maximum rates may be established to be charged for the use of water sold for or rented for a useful or beneficial purpose, and until that is done the owner and user may make such contracts therefor as may  to them seem just and reasonable.

8. Under the laws of this state, such a contract as that under consideration may be made to continue for thirty years, except that rates may be established from time to time as the legislature may by law provide.

9. The question of the constitutionality of a legislative act will not be decided unless it is necessary to a decision of the cause in which it is raised.

(Syllabus by the court.)

APPEAL from District Court of Idaho County. Honorable Edgar C. Steele, Judge.

Action to recover for water furnished the village of Grangeville on contract. Judgment for respondent. Affirmed.

The facts are stated in the opinion.

Fogg & Nugent and R. F. Fulton, for Appellant.

As we view the case presented by the record herein the consideration of broad fundamental questions of law, regardless of a minute examination of the errors assigned, will lead to a conclusion adverse to the validity of the plaintiff's franchise and contract, and thereby relieve the court of the necessity of further or detailed examination of the record. Plaintiff's pleadings as well as the court's findings and decision would seem to make the constitutionality of the law of 1893 the paramount issue. The plaintiff contends and the learned district judge concludes that because of the unconstitutionality of the Law of 1893, the village must be deemed to have been incorporated under the Law of 1887, and that it is governed by the provisions of the Revised Statutes of 1887 applicable to towns and villages. Counsel for the plaintiff upon the trial cited the following provisions of the Law of 1887 as sustaining the plaintiff's contract—subdivision 12, section 2230: "The board of trustees have power . . . . to purchase water for fire protection from others maintaining waterworks in such town or village in such manner as the trustees of said town or village may determine." Contract *ultra vires* even under Law of 1887. The attention of the court is called particularly to the language in the subdivision cited by counsel, "to purchase water for fire purposes from others maintaining waterworks." This does not authorize a contract with others to establish waterworks, but it would seem to contemplate merely the purchase of water from others having plants already established. Subdivisions 32 and 33 of said section 2230, Revised Statutes of 1887, expressly grant power to the municipality, and authorize the board of trustees, by proper ordinances, to acquire water rights and to erect and maintain waterworks for the purpose

of furnishing water to the inhabitants of such town or village and for the extinguishment of fires. These subdivisions, and not subdivision 12, provide the means and grant the power to make adequate, permanent arrangements for the securing of water for fire purposes. It would seem very apparent even under the laws of 1887 to be the purpose of the legislature to guard the municipalities within the territory from just such. monopolies as in effect would be created by the thirty year contract upon which plaintiff's claim herein is based, by providing ample means for municipal ownership and control—a purpose and policy that has been incorporated into the organic laws. of the state by the framers of the constitution and consistently exemplified by all subsequent legislation bearing upon the subject. Sections 2710 and 2712, Revised Statutes of 1887, concerning the organization of water companies is contemporaneous legislation embodied in and adopted in the Revised Laws of 1887, and further emphasizes the policy of the territory at that time to withhold from municipalities the authority to burden the inhabitants with such contracts as the one at issue in this case. We will now proceed to the consideration of the various questions affecting the validity of the contract upon which plaintiff bases his demand in this action. "It is a general and undisputed proposition of law that a municipal corporation possesses and can exercise the following powers and. no others: 1. Those granted in express words; 2. Those necessarily or fairly implied in or incident to the powers expressly granted; 3. Those essential to the declared objects and purposes of the corporation, not simply convenient, but indispensable. Any fair, reasonable doubt concerning the existence of. a power is resolved by the courts against the corporation and the power is denied. Of every municipal corporation the charter or statute by which it is created is its organic act. Neither. the corporation nor its officers can do any act, or make any contract, or incur any liability not authorized thereby or by some legislative act applicable thereto. All acts beyond the scope of the powers granted are void." (1 Dillon on Municipal Corporations, 4th ed., sec. 89; *Saganaw Gas Light Co. v. City of Saganaw,* 28 Fed. 534; *Ottawa v. Carey,* 108 U. S. 110, 2 Sup.

Ct. Rep. 361, 27 L. ed. 674.) Applying these principles to the questions involved in this case, it must be conceded, under the Laws of 1893, that the power to pass the ordinance or to make the contract under consideration is nowhere granted in express words. Counsel for plaintiff contended upon trial: 1. That the power to make this contract is necessarily implied in or incident to the powers expressly granted. 2. That the power to make the contract is essential to the declared object and purpose of the corporation. None of the cases we have examined go to the extent that such authority would be implied if contrary to the manifest legislative intent. The case of *Crawfordsville v. Braden,* 130 Ind. 149, 30 Am. St. Rep. 214, 28 N. E. 851, 14 L. R. A. 268, cited by plaintiff's counsel, states this principle correctly. The legislature since the adoption of the constitution has by various acts provided full and adequate means providing for the control of water to be used for irrigating purposes, but no legislation has been enacted since statehood providing for the control of water for the purpose of distribution and sale to municipalities and to the inhabitants thereof; nor has there been any subsequent legislation affecting the provisions contained in the water corporation law. (Rev. Stats., secs. 2710-2713.) Nor would it seem that any change in such law is necessary. Our supreme court in the case of *Boise City v. Artesian Hot & Cold Water Co.,* 4 Idaho, 351, 39 Pac. 562, has decided, in effect, that this is just such a statute as was contemplated and authorized by said section 2, article 15 of the constitution, and further that it is not repugnant to section 6, article 15 of the constitution, which commands the legislature to provide by law the manner by which reasonable rates shall be established. The defendant contended in the trial court that the plaintiff's contract was invalid and that he could not recover from the defendant village or maintain this action for the reason, among other things, that he had no franchise as would authorize him to engage in the business of selling water to the municipality or to the inhabitants thereof, and particularly that no such franchise under our statute could be granted except to a *quasi* public corporation organized for such purpose. (Const., art. 15, sec. 2; 8 Ency. of Law, 1st ed., 585,

586; *California v. Central Pac. Ry. Co.,* 127 U. S. 1, 8 Sup. Ct. Rep. 1073, 32 L. ed. 157; *Allen v. Clausen,* 114 Wis. 244, 90 N. W. 181.) On the question of whether the contract creates a monopoly, and if it does whether such contract is prohibited by public policy, see *Thrift v. Elizabeth City,* 122 N. C. 31, 30 S. E. 349, 44 L. R. A. 427; *City of Brenham v. Brenham Water Co.,* 67 Tex. 542, 4 S. W. 143; *Freeport Water Co. v. Freeport,* 180 U. S. 587, 21 Sup. Ct. Rep. 493, 496, 498, 45 L. ed. 679; *Davenport v. Kleinschmidt,* 6 Mont. 502, 13 Pac. 249. The contract in question is clearly within the prohibition of the constitutional provisions restricting the contracting of indebtedness, that debts payable in the future, upon the happening of some future event, as the rendition of service or the delivery of property, are within such restriction upon municipal indebtedness, as well as debts presently payable. (*Springfield v. Edwards,* 84 Ill. 626; *Law v. People,* 87 Ill. 385; *Prince v. Quincy,* 28 Ill. App. 490; *Beard v. City of Hopkinsville,* 95 Ky. 239, 44 Am. St. Rep. 222, 24 S. W. 872, 23 L. R. A. 402; *Prince v. Quincy,* 105 Ill. 138, 44 Am. Rep. 785; *Niles Waterworks v. Niles,* 59 Mich. 311, 26 N. W. 525; *Smith v. Newburg,* 77 N. Y. 130; *Earles v. Wells,* 94 Wis. 285, 59 Am. St. Rep. 886, 68 N. W. 964; *State v. Atlantic City,* 49 N. J. L. 558, 9 Atl. 759; *State v. Medbery,* 7 Ohio St. 522; *Erie's Appeal,* 91 Pa. St. 398.)

A. S. Hardy, for Respondent.

James E. Babb, of Counsel.

We will first consider the contention of appellant as to the application of sections 2710, 2711 and 2712 of the Revised Statutes of 1887, for the reason that, if it should be determined by the court that the respondent is subject to the provisions of these statutes, then it would make no difference as to any of the other contentions made by either appellant or respondent. In other words, if respondent is bound to furnish "free water" as provided for in these sections, then he cannot recover in this action under any theory of the case. It is an admitted fact in this case that respondent's system of waterworks has never been

owned by a *corporation,* but has at all times been the property of *individuals.* The sections above cited apply only to *corporations.* Title 4 of the Civil Code of 1887, Revised Statutes, is devoted exclusively to *corporations,* providing for their organizations, conferring powers and privileges and imposing duties, restrictions and obligations; and sections 2710 to 2713, inclusive, comprise chapter 5 of this title, and we find this chapter entitled "Water and Canal Corporations." The legislature in adopting the provisions of chapter 5, under which sections 2710, 2711 and 2712 are found, was evidently seeking to impose conditions, restrictions and obligations as well as limitations upon its own creatures—corporations—and evidently had no thought or purpose of extending such conditions, restrictions and limitations to natural persons. In May, 1852, the legislature of California adopted a statute from which sections 2710 to 2712 of our code were adopted literally; and in May, 1893, and prior to the incorporation of the village of Grangeville, the United States circuit court for the southern district of California, in the case of *Santa Ana Water Co. v. Town of San Buenaventura,* 56 Fed. 339, construed these provisions, and held squarely that the statutes had no application to *individuals.* (*Los Angeles City Water Co. v. City of Los Angeles,* 88 Fed. 720.) It has often been held that obligations, restrictions and limitations imposed by statute upon corporations have no application to individuals, unless so expressly declared. (*Gregory v. Blanchard,* 98 Cal. 311, 33 Pac. 199.) "Respondent contends that the portion of section 2711 which requires the water company accepting the privileges granted by the statute to furnish any city so occupied water for fire purposes free is unconstitutional, as repugnant to section 2, article 15, of the constitution. This section simply announces a general principle, and the first clause amounts only to a definition; that is, that the right to collect rates, etc., for water supplied to any county, city or town, or the inhabitants thereof, is a franchise, and cannot be exercised except in the manner prescribed by law. In our view of it, this section is not prohibitory at all; it is, as said above, simply a definition." Section 1 of article 14 of the California constitution is identical with section 1 of

our article 15, with the exception that in California they proceed to lay down a specific method in their constitution for determining rates to be charged in municipalities.   Our conclusion is that the contract involved in the case at bar is not made invalid by the provisions of the constitution invoked by appellants.   (*San Diego Flume Co. v. Souther,* 90 Fed. 164, 32 C. C. A. 548.)   We think, however, that if the court should hold that the act of 1893 was constitutionally enacted and became a law of this state, still the court could find ample and abundant authority within its provisions, both express and necessarily implied, to authorize and support the ordinances and contract involved in this issue.   It certainly cannot be meant that a municipal corporation within this state shall be left without the means of protecting its property from destructive fires, and the health of its citizens from epidemics and diseases, until such time as it has grown prosperous and wealthy enough to be able to construct and maintain a system of waterworks on its own account.   (*Andrews v. National Foundry etc. Co.,* 61 Fed. 787, 10 C. C. A. 60; *City of Newport v. Newport Light Co.,* 84 Ky. 174; *City of Springfield v. Fullmer,* 7 Utah, 450, 27 Pac. 577; *Intendant and Town Council of Livingston v. Pippin,* 31 Ala. 542; *Crawfordsville v. Braden,* 130 Ind. 149, 30 Am. St. Rep. 214, 28 N. E. 851, 14 L. R. A. 268; *First Nat. Bank v. Sarlls* (Ind.), 28 N. E. 434; *Hasty v. City of Huntington,* 105 Ind. 540, 5 N. E. 559; *Clark v. City of South Bend,* 85 Ind. 276, 44 Am. Rep. 13; *Corporation of Bluffton v. Studabaker,* 106 Ind. 129, 6 N. E. 1; *Grant v. City of Davenport,* 36 Iowa, 402; *Warren v. City of Chicago,* 118 Ill. 329, 11 N. E. 218; *Harlem Gas & Light Co. v. New York,* 33 N. Y. 309; Tiedeman on Municipal Corporations, sec. 175; *Mauldin v. City Council,* 33 S. C. 1, 11 S. E. 434, 8 L. R. A. 291.)   We suggest that there is a serious doubt if title 13 of the Political Code of the Revised Statutes of 1887 has ever been repealed.   Section 110 of the act of 1893 says: "All acts or parts of acts in conflict with this act are hereby repealed."   It is doubtful if it can be said that subdivision 12 of section 2230, Revised Statutes, is in conflict with any provisions of the act of 1893.   There was a solemn

contract between the village and Orchard & Graham, and under
its terms and conditions, Orchard & Graham and Mr. Jack
invested a large sum of money, nearly $35,000, and gave
the city an option on the entire plant and system, and the
contract has been fully executed on the part of Orchard &
Graham and their assigns. The city has acquired valuable
rights under this contract, and now under no known rule of law
or morals should be allowed to escape liability. This proposi-
tion was well and forcibly stated by Chief Justice Huston in
*Bellevue Water Co. v. City of Bellevue,* at page 695, in the
following language: "There is no distinction between a corpo-
ration and an individual in regard to liability under a contract.
It is settled law that a corporation cannot avail itself of the
benefits of a contract, and, when called to meet its obligations
thereunder, set up a plea of *ultra vires.* To allow such a plea
would not only be sanctioning rascality, but would be offering
a premium therefor. The disposition on the part of corpora-
tions to reach desired ends by 'ways that are dark and tricks
that are vain,' does not require the spur of judicial sanction."
(*Illinois Trust etc. Bank v. Arkansas City,* 76 Fed. 271, 34 L.
R. A. 518, 22 C. C. A. 171; *Paxson v. Brown,* 61 Fed. 874, 881,
27 U. S. App. 49, 60, 10 C. C. A. 135; *Peace v. Arbuckle,* 22
Minn. 417; *Cairncross v. Lorimer,* 3 Macq. (H. L. Cas.) 827,
829; *Dickerson v. Colgrove,* 100 U. S. 578, 582, 25 L. ed. 618,
620; *Faxton v. Faxton,* 28 Mich. 159; *Kirk v. Hamilton,* 102
U. S. 68, 75, 26 L. ed. 79, 81; *Evans v. Snyder,* 64 Mo. 516;
*Zabriskie v. Cleveland etc. R. R. Co.,* 64 U. S. (23 How.) 381,
400, 401, 16 L. ed. 488, 497, 498; *Union Pac. Ry. Co. v. Chicago
etc. Ry. Co.,* 51 Fed. 309, 326, 327, 2 C. C. A. 174, 239, 240;
*Butler v. Cockrill,* 73 Fed. 945, 20 C. C. A. 122; *Columbus
Water Co. v. Mayor of Columbus,* 48 Kan. 99, 28 Pac. 1097, 15
L. R. A. 359; *Chenango Bridge Co. v. Binghampton Bridge Co.,*
70 U. S. (3 Wall.) 51, 18 L. ed. 137.) In contracting for
waterworks to supply itself and its inhabitants with water, the
village was not exercising its governmental or legislative powers,
but its business or proprietary powers. The purpose of such a
contract is not to govern its inhabitants, but to obtain a private

benefit for the city itself and its citizens.    (*Little Falls Electric etc. Co. v. Little Falls,* 102 Fed. 663; *Cincinnati v. Cameron,* 33 Ohio St. 336; *Los Angeles Water Co. v. City of Los Angeles,* 88 Fed. 731; *Safety Insulated Wire etc. Co. v. Mayor and City Council of Baltimore,* 66 Fed. 140, 13 C. C. A. 375; *Vincennes v. Citizens' Gaslight & Coke Co.,* 132 Ind. 114, 31 N. E. 573, 16 L. R. A. 485; *Valparaiso v. Gardner,* 97 Ind. 1, 49 Am. Rep. 416; *State v. Mayor of Great Falls,* 19 Mont. 518, 49 Pac. 15; *Walla Walla v. Walla Walla Water Co.,* 172 U. S. 15, 19 Sup. Ct. Rep. 77, 43 L. ed. 347; 1 Beach on Public Corporations, sec. 555; *Stevens v. City of Muskegon,* 111 Mich. 72, 69 N. W. 229, 36 L. R. A. 777; *National Life Ins. Co. v. Board of Education,* 62 Fed. 778, 10 C. C. A. 637; *West Plains T. P. Co. v. Sage,* 69 Fed. 946, 16 C. C. A. 553; *Bissell v. Jeffersonville,* 24 How. 287, 16 L. ed. 664; *Hackett v. Ottawa,* 99 U. S. 86, 25 L. ed. 363; *National Tube Works Co. v. Chamberlain,* 5 Dak. 54, 37 N. W. 761; *San Francisco Gas Co. v. City of San Francisco,* 9 Cal. 453; *Gregsten v. City of Chicago,* 145 Ill. 451, 36 Am. St. Rep. 496, 34 N. E. 429; *City of Denver v. Webber,* 15 Colo. App. 511, 63 Pac. 804.)    Length of term of franchise and contract cannot be raised in this case.    (*Illinois Trust etc. Bank v. Arkansas City,* 76 Fed. 271, 34 L. R. A. 525, 22 C. C. A. 171.)    The village had authority to grant a franchise and make a contract for a period of thirty years.    (*Vincennes v. Citizens' Gaslight etc. Co.,* 132 Ind. 114, .31 N. E. 573, 16 L. R. A. 489; *McBean v. City of Fresno,* 112 Cal. 159, 53 Am. St. Rep. 191, 44 Pac. 361, 31 L. R. A. 794; *Atlantic City Water Co. v. Atlantic City,* 48 N. J. L. 378, 6 Atl. 24; *Hurley Water Co. v. Town of Vaughn,* 115 Wis. 470, 91 N. W. 971; *Oconto City Water Supply Co. v. City of Oconto,* 105 Wis. 76, 80 N. W. 1113; *Maine Water Co. v. City of Waterville,* 93 Me. 586, 45 Atl. 830, 49 L. R. A. 294; *Crowder v. Town of Sullivan,* 128 Ind. 486, 28 N. E. 94, 13 L. R. A. 647; *Foland v. Town of Frankton,* 142 Ind. 546, 41 N. E. 1031; *Higgins v. San Diego Water Co.,* 118 Cal. 524, 45 Pac. 824, 50 Pac. 670; *Montgomery Gas Light Co. v. City Council,* 87 Ala. 245, 6 South. 113, 4 L. R. A. 616.)    It

seems to be the contention of appellant that the village authorities had no power under the law to enact ordinance No. 42, and thereby grant Orchard & Graham a franchise to lay their pipes in the streets, lanes and alleys of the village for the purpose of delivering water to the inhabitants of said village for the period of thirty years or for any time whatever. They seem to base their contention upon the theory that such a license or franchise can only be granted to a corporation, and not to individuals or natural persons. We think, in the first place, that this is a question which cannot be litigated in this case. (*Evans v. Kroutinger, ante,* p. 153, 72 Pac. 882.) The village cannot be heard to claim the use of water from this system as a matter of right and law in one breath and in the next breath assert that the system is being maintained and operated within its corporate limits in violation of the law. This would seem an instance where the doctrine of estoppel should apply to the village. That doctrine seems to be almost uniformly applied to municipalities where they have exercised or assumed to exercise their *purely and distinctly business or proprietary powers,* as distinguished from their *legislative or governmental powers.* Certainly the permission to lay pipes underground in the streets of a municipality cannot be termed one of the legislative powers of the village, but rather one of the contractual or business powers of the village, and as such the public at large and the state have no right or interest therein, but rather the village and its inhabitants by that means seek to obtain a business interest or advantage. (*Stevens v. City of Muskegon,* 111 Mich. 72, 69 N. W. 229, 36 L. R. A. 777; *Sutton v. City of Snohomish,* 11 Wash. 24, 48 Am. St. Rep. 847, 39 Pac. 275; *Atchison St. Ry. Co. v. Missouri Pac. Ry. Co.,* 31 Kan. 661, 3 Pac. 288; *City of Quincy v. Bull,* 106 Ill. 337; *City of Newport v. Newport Light Co.,* 84 Ky. 166; *Hanson v. Wm. A. Hunter Electric Light Co.,* 86 Iowa, 722, 48 N. W. 1005, 53 N. W. 84; *City of Atlanta v. Gate City Gas Light Co.,* 71 Ga. 106.) The contention of appellant that the ordinance and contract under consideration are in violation of section 3, article 8 of the constitution, and also of section 93,

page 112, Session Laws of 1899, is illogical and unsound, and ·contrary to the weight of adjudicated cases. Most· all' of ·the later and more carefully considered cases seem to hold to the doctrine that a contract for a supply of water or light from month to month or year to year is not the creation of an indebtedness, as contemplated by such constitutional and statutory provisions as we have in Idaho. We think the correct view to take of an expenditure authorized under such an ordinance and contract is that the same is a current expense, to be met from month to month and year to year in the same manner as an expense for the supply of prisoners or the rental of rooms for council meeting or· police court, or any other expenditure commonly designated a "current expense." (*Walla Walla v. Walla Walla Water Co.,* 172 U. S. 19, 19 Sup. Ct. Rep. 77, 43 L. ed. 349; *City of Valparaiso v. Gardner,* 97 Ind. 1, 49 Am. Rep. 416; *Territory v. City of Oklahoma,* 2 Okla. 158, 37 Pac. 1094; *McBean v. City of Fresno,* 112 Cal. 159, 53 Am. St. Rep. 191, 44 Pac. 360, 31 L. R. A. 794; *Grant v. City of Davenport,* 36 Iowa, 402.)

SULLIVAN, C. J.—This action was brought by the respondent Jack against the village of Grangeville to recover the sum of $249.99, claimed to be due him for fire hydrants and the use of water for fire purposes, flushing sewers, sprinkling streets and other municipal purposes for the months of June, July and August, 1902. The pleadings consist of the complaint, answer, cross-complaint and answer thereto. Upon the issues thus made the cause was tried before the court without a jury, and resulted in a judgment in favor of the respondent for said sum. The following facts appear from the record:

Prior to the seventh day of September, 1898, the village of Grangeville was without any system of waterworks and had no fire protection and no supply of pure, fresh water for its inhabitants. Shortly prior to that date an epidemic of typhomalarial fever raged in that village and from one-fourth to one-third of the entire population of the village was infected with that disease, which, it is claimed, was mostly due to the impure, unwholesome and polluted condition of its water supply. It also appears that not long prior to said date quite a

large portion of the business center of the village had been
burned.    On said date the board of village trustees adopted or-
dinance No. 42, which was as follows:

## "ORDINANCE No. 42.

"An Ordinance Authorizing H. Orchard and W. R. Graham to
Construct and Operate a System of Water Works in the
Village of Grangeville, and for that Purpose to Occupy
and Use so Much of the Streets, Lanes and Alleys thereof
as may be Necessary for the Same, and to Supply Water to
said Village and Its Inhabitants, and to Collect Rates
Therefor.

"Be it ordained by the chairman and board of trustees of the
village of Grangeville:

"Section 1.    That H. Orchard and W. R. Graham, their
successors and assigns are hereby authorized to construct, main-
tain and operate a system of water works in the village of
Grangeville for the period of thirty years, for the purpose of
supplying water, and to charge and collect rates therefor, pro-
vided that such rates are reasonable, equitable, without distinc-
tion of person, and provided further such rates shall not exceed
two dollars per month for domestic use, for families of from
one to six, and not to exceed twenty-five cents per month for
each additional number of the family in addition to six, and for
such other private use such rate as shall be reasonable and just.

"Section 2.    Water furnished shall be pure and wholesome,
and kept fresh and free from contamination.

"Section 3.    That said H. Orchard and W. R. Graham, their
successors and assigns, are hereby authorized to use so much
only of the streets, lanes and alleys of the village as may be
necessary and reasonable for the purpose mentioned in section
one of this ordinance.

"Section 4.    In the construction of said system of water
works, the said parties shall use material required by a good
and substantial system, shall place all pipes below the line of
ordinary frosts, and when ground is once broken, work shall be
prosecuted to completion without interruption, delay or un-
necessary or prolonged obstruction to travel or business, and no
street or crossing shall be wholly closed or rendered impassable

at any time without express concurrence of the board of trustees previously obtained, and immediately upon completion of laying of pipe the excavation for the same shall be immediately filled, and the surface left even with the grade of the streets, said parties shall place and keep signals about all dangerous excavations made.

"Section 5. The said parties, their successors and assigns are hereby required to commence the construction of said water works within two months after the passage of this ordinance, and to carry the same to completion within one year after the passage of this ordinance.

"Section 6. All rights not herein granted to said H. Orchard and W. R. Graham, their successors and assigns are reserved to the village, and nothing herein contained shall be construed as an exclusive permit and shall not limit the power of the village to grant like privileges to other parties, firms or corporations, nor to impair the rights and remedies of the village in the courts of law or equity.

"Section 7. As a further condition and precedent, and consideration for the granting of these rights and privileges, the village of Grangeville or its successors in municipal government for the territory embraced therein, shall have the option to purchase the completed water system herein provided for and all its appurtenances at the expiration of ten years from the passage of this ordinance, or at any time thereafter upon the following terms, to wit: The amount of the net earnings of the system for the year next preceding the offer to purchase by the said village or its successors shall be multiplied by ten and the product arriving therefrom shall be and is hereby agreed upon as the purchase price, which said H. Orchard and W. R. Graham, or their successors in interest or assigns shall accept.

"Section 8. The said parties, their successors in interest or assigns, in accepting this ordinance, and in constructing and operating the said system thereunder, expressly agree to the foregoing section, and further expressly agree that should they thereafter enter into a contract with said village for the supply of water for any municipal purpose, that the same shall be terminated upon the purchase of said system under the terms of said section.

"Section 9. That said H. Orchard and W. R. Graham shall file with the village clerk their written acceptance of the provisions of this ordinance before the commencement of the construction of said works, otherwise they shall be deemed to have rejected the same, and to have waived their rights thereunder.

"Section 10. This ordinance shall be in force and effect from and after its passage, approval and publication.

"Passed and approved September the 7th, 1898.

"HENRY WAX,<br>
"Chairman Board of Trustees.

"Attest: W. E. BUNNELL,
"Village Clerk."

Thereafter and on the same date said board of trustees passed and adopted Ordinance No. 43, which is as follows:

"ORDINANCE No. 43.

"An Ordinance to Secure a Supply of Water for the Village of Grangeville.

"Be it ordained by the chairman and board of trustees of the village of Grangeville:

"Section 1. That the village of Grangeville by its ordinance, hereby contracts and agrees with H. Orchard and W. R. Graham, their successors and assigns, for a supply of water for the village of Grangeville, for the period of thirty years, in the manner and upon the terms and conditions provided and set forth in this ordinance and upon the acceptance of the terms of this contract by said parties in writing, the same shall become a valid and binding contract between the parties.

"Section 2. In the construction and operation of water works the said parties shall conform in all matters and things to the provisions of Ordinance No. 42 of the village of Grangeville, approved September 7th, 1898, granting to said parties the right to occupy and use the streets of the village and to construct and operate water works therein, and the provisions of said ordinance shall become and be correlative parts of this contract.

"Section 3. The contract authorized by this ordinance is, among other things upon the consideration that the said parties shall in addition to its direct service provide reservoir service of sufficient altitude to afford pressure through its pipes

under ordinary conditions of service of at least sixty pounds per square inch at Main Street in said village, and of sufficient capacity to maintain two seven-eighths inch streams, or three-fourths inch streams, projecting water to an altitude of at least forty feet continuously for at least three hours, and shall maintain a system of sufficient capacity to supply a village of at least three thousand inhabitants, and shall extend the same if necessary in advance of all future demands of said service.

"Section 4. The village shall furnish and place at such places as they may see fit and connect with such water works, such fire hydrants as they may deem necessary at its own costs and expense, and shall pay to the said parties their successors or assigns for the use of said water hereinbefore stated the sum of eighty-three and thirty-three one-hundredths dollars per month for not exceeding twenty hydrants, and the sum of five dollars per month for each additional hydrant in excess of twenty, said sums to be paid monthly in warrants of said village, said parties, their successors or assigns shall extend mains of at least four inches in diameter of said system of water works to all portions of said village where fire protection is necessary, and six inch mains from the reservoir to and along Main Street.

"Section 5. The village of Grangeville shall have unlimited use in case of fire, and through its officers or employees shall have all reasonable and necessary control of the water mains, reservoirs and works for extinguishment of fires, for the flushing of sewers under the direction of such officers as the trustees of the said village shall designate, not oftener than once a week, and for the purpose of drilling fire companies, and for such other usual municipal purposes, and shall use such water as may be necessary therefor, provided said village shall be responsible to said parties for any damage occurring through the carelessness or negligence of its officers.

"Section 6. This contract shall be voidable by the village of Grangeville so far as it requires the payment of money upon the judgment of any court of competent jurisdiction, whenever there shall be a substantial failure on the part of said parties, their successors or assigns to keep or perform any contract or agreement on its part herein specified, or in said contract

contained, but accident or reasonable delay shall not be ·deemed such failure. The failure of said parties to comply with the provisions of said Ordinance No. 42 aforesaid, relating to the time within which it shall have its water works in operation shall avoid and terminate this contract.

"Section 7. This contract shall become and be in force as to the payment of money from and after the date that the water service shall begin, provided that the village shall pay said parties fifty per cent of the rate hereinbefore provided from the time that the service shall be sufficiently extended to afford fire protection to the entire business portion of the town, on condition, however, that said parties are proceeding to extend said system with reasonable diligence to the full capacity hereinbefore provided.

·  "Section 8. The village clerk is hereby authorized and directed to make and enter into a contract in writing for and on behalf of the village of Grangeville with said H. Orchard and W. R. Graham, their successors or assigns, in conformity with this ordinance, and the execution of such by the said parties shall be and constitute an acceptance of this ordinance and contract, and such contract as executed by both parties shall be recorded in full by the clerk in the record of ordinances.

"Section 9. This ordinance shall be in force and effect from and after its passage and publication.

"Passed and approved September 7th, 1898.

"HENRY WAX,

"Chairman Board of Trustees.

"Attest:   W. E. BUNNELL,

"Village Clerk."

On September 8, 1898, the village clerk acting under the direction and authority of said ordinance No. 43, entered into and executed a contract with Orchard & Graham, which contract is as follows:

"A CONTRACT TO SECURE A WATER SUPPLY FOR THE VILLAGE OF GRANGEVILLE.

"The ·village of Grangeville hereby contracts and agrees with H. Orchard and W. R. Graham, their successors and assigns, for ·a supply of water for the village of Grangeville for a period

of thirty years, in the manner and form and upon the terms and conditions provided and set forth in this ordinance, and upon the acceptance of this contract by said parties in writing, the same shall become valid and binding contract between the parties.

"In the construction and operation of water works the said parties shall conform in all matters and things to the provisions of ordinance No. 42 of the village of Grangeville, approved September 7, 1898, granting to said parties the right to use and occupy the streets of the village and to construct and operate water works therein, and the provisions of said ordinance shall become and be correlative parts of this contract.

"This contract is among other things upon the consideration that said parties shall in addition to its direct service provide reservoir service of sufficient altitude to afford pressure through its pipes under ordinary conditions of service of at least sixty pounds per square inch at Main Street in said village, and of sufficient capacity to maintain two seven-eighths inch streams or of three three-fourths inch streams projecting water to an altitude of at least forty feet continuously for at least three hours, and shall maintain a system of sufficient capacity to supply a village of at least two thousand inhabitants, and shall extend the same if necessary in advance of all future demands of said service.

"The village shall furnish and place at such place as they may see fit and connect with such water works such fire hydrants as they may deem necessary, at its own cost and expense, and shall pay to the said parties, their successors or assigns, for the use of said water as hereinbefore stated, the sum of eighty-three and thirty-three one-hundredths dollars per month for not exceeding twenty hydrants, and the sum of five dollars for each additional hydrant in excess of twenty, said sums to be paid monthly in warrants of said village, said parties, their successors or assigns, shall extend mains of at least four inches in diameter of said system of water works to all portions of said village where fire protection is necessary, and six inch mains from the reservoir to and along Main Street.

"The village of Grangeville shall have unlimited use of hydrants in case of fire, and through its officers and employees

shall have all reasonable and necessary control of the water mains, reservoirs, and water works for the extinguishment of fires, for the flushing of sewers under the direction of such officers as the trustees of the said village shall designate, not oftener than twice a week, and for the purpose of drilling fire companies and for other usual public municipal purposes, and shall use such water as may be necessary therefor, provided said village shall be responsible to said parties for any damage occurring through the carelessness or negligence of said officers.

"This contract shall be voidable by the village of Grangeville so far as it requires the payment of money, upon the judgment of any court of competent jurisdiction, wherever there shall be substantial failure upon the part of said parties, their successors or assigns to keep or perform any contract or agreement on its part herein specified, or in said contract contained, but accident or reasonable delay shall not be deemed such failure, the failure of the said parties to comply with the provisions of said ordinance No. 42 aforesaid relating to the time within which it shall have its water works in operation shall avoid and terminate this contract.

"This contract shall become and be in force as to the payment of money from and after the date that the water service shall begin, provided that said village shall pay said parties fifty per cent of the rate hereinbefore provided from the time that the service shall be sufficiently extended to afford fire protection to the entire business portion of the town, on condition, however, that said parties are proceeding to extend said system with reasonable diligence to the full capacity hereinbefore provided.

"Dated this 8th day of September, A. D. 1898.
                          "W. E. BUNNELL,
                                    "Village Clerk.

                    "H. ORCHARD and
                    "W. R. GRAHAM,
                              "By H. ORCHARD."

Said Orchard & Graham proceeded under and in accordance with the terms of said contract and ordinances and constructed a water system in full compliance with the terms thereof at

an expense of between $30,000 and $35,000; and thereafter, on the thirteenth day of May, 1899, notified said board of trustees of the completion of said system.   Thereafter, on May 22, 1899, the board made an estimate of the revenue of the city from all sources for the year ending May 1, 1899, and thereupon made their appropriations for the year ending May 1, 1900, and among the various items so appropriated is the item of $1,000 to keep up the monthly payments required to be paid for water for said village, by the terms of said contract. On June 3, 1899, the village made its first monthly payment of $83.33, and continued to make such payments, monthly, until June 1, 1902.

During said time the appellant Jack became the assignee of the said Orchard & Graham, and continued to furnish the village water upon the conditions and terms of said contract and ordinance.   It also appears from the record that the village of Grangeville was a municipal corporation incorporated by petition of the inhabitants and order of the board of county commissioners, dated October 15, 1899.   But it is a disputed question whether said village was incorporated under the provisions of the Revised Statutes of 1887 or under an act approved March 4, 1893.   But the trial court found as a fact that it was incorporated under the provisions of the Revised Statutes.

The respondent and his predecessors have continued to supply water to the village ever since the completion of said water system and supplied water for the said months of June, July and August, 1902.   In the month of April, 1902, new officers were elected for said village, and the new board of trustees refused to pay the respondent under said contract, or at all, for the use of water for said months, and insisted that the village was entitled to such water free of charge under the provisions of sections 2710 to 2713, inclusive, of the Revised Statutes of 1887.   The law of March 4, 1893, was attacked as unconstitutional, in that it was not passed as provided by section 15 of article 3 of the constitution.   However, in our view of the case it is not necessary for us to pass upon that question.

Counsel for appellants assign more than sixty alleged errors, but the main question is, Do the provisions of sections 2710, 2711 and 2712 of the Revised Statutes apply to said contract

and the respondent and require him to furnish the village water in case of fire and other great necessity free of charge. Said sections are as follows:

"Sec. 2710. No corporation formed to supply any city or town with water must do so unless previously authorized by an ordinance of the authorities thereof, or unless it is done in conformity with a contract entered into between the city or town and the corporation. Contracts so made are valid and binding in law, but do not take from the city or town the right to regulate the rates for water, nor must any exclusive right be granted. No contract or grant must be made for a term exceeding fifty years.

"Sec. 2711. All corporations formed to supply water to cities or towns must furnish pure, fresh water to the inhabitants thereof for family uses, so long as the supply permits, at reasonable rates and without distinction of person, upon proper demand therefor; and must furnish water to the extent of their means in case of fire or other great necessity, free of charge. The rates to be charged for water must be determined by commissioners to be selected as follows: Two by the city or town authorities, or when there are no city or town authorities, by the board of commissioners of the county, and two by the water company; and in case a majority cannot agree to the valuation, the four commissioners must choose a fifth commissioner; if they cannot agree upon a fifth, then the probate judge of the county must appoint such fifth person. The decision of the majority of the commissioners must determine the rates to be charged for water for one year, and until new rates are established. The board of county commissioners or the proper city or town authorities may prescribe proper rules relating to the delivery of water, not inconsistent with the laws of the territory.

"Sec. 2712. Any corporation created under the provisions of this title for the purposes named in this chapter, subject to the reasonable direction of the board of county commissioners, or city or town authorities, as to the mode and manner of using such right of way, may use so much of the streets, ways and alleys in any town, city or county, or any public road therein, as may be necessary for laying pipes for conducting

water into any such town or city, or through or into any part thereof."

If it should be held that the provisions of said sections apply to said contract, then it would make no difference as to any of the other contentions made by appellant or respondent. For if the respondent is bound by said provisions to furnish the village free water, then he cannot recover in this action on any theory of the case. It is admitted that the respondent's system of waterworks has never been owned by a corporation, but has at all times been the property of private individuals. It was constructed by Orchard & Graham and operated for a time by them, and was thereafter sold and transferred to the respondent. If the provisions of said sections of the statute apply only to corporations as contended by counsel for respondent, then the village is liable to pay at least reasonable compensation to the respondent for the water used by it.

Title 4 of the Civil Code of the Revised Statutes of 1887 is in regard to corporations. Chapter 5 of said title, which chapter contains the sections above cited, is entitled "Water and Canal Corporations." Those facts of themselves would clearly indicate that the provisions and law included in said title and chapter were not intended to apply to private persons or individuals. Said section 2711 contains the provision in regard to free water for cities and towns. It provides that "all corporations formed to supply water to cities or towns must furnish pure, fresh water to the inhabitants thereof, etc., and must furnish water to the extent of their means in case of fire and other great necessity, free of charge.". Can it be said that said provisions were intended to include individuals or natural persons when the law-making power only used the word "corporations"? If we apply to this statute the familiar rule of construction, the one universally adopted, that the naming of one class excludes all others—*expressio unius est exclusio alterius*—said statute does not include individuals or natural persons. Said sections 2710 and 2711 were adopted literally from the statutes of California, which California statutes were enacted in May, 1852.

The circuit court of the United States for the southern district of California, in the case of *Santa Ana Water Co. v.*

*Town of San Buenaventura,* 56 Fed. 339, construed the provisions of the California statutes and held that said sections had no application to individuals. The court, after copying that portion of the California statute corresponding to said section 2710, says: "By this act it was declared, as will be observed, that no contract entered into between a city and a company incorporated under the provisions of the act 'should take from the city the right to regulate the rates for the water,' and that provision had no application to Arnez and his associates for the reason that they were not incorporated under that or any other act."

Questions were involved in that case that are not in the case at bar, and we cite and approve the conclusion reached there on the one proposition alone—that is, that said statutes have no application to individuals. The effect of the assignment of said contract to a water corporation is there discussed and decided. That question is not involved in this case, and we are not called upon to pass upon it. In the case at bar the contract was made by the village with private individuals and their successor in interest is a private individual. (See, also, *Los Angeles City Water Co. v. City of Los Angeles,* 88 Fed. 720.)

The question as to whether the water rates may be regulated as provided by the laws of this state is not involved in this case. The trustees do not complain of the contract rate, nor have they fixed any rate. Their claim is that the village is entitled to free water under the provisions of said sections of our statute.

Under the provisions of subdivision 12 of section 2230 of the Revised Statutes, the board of trustees have power to provide cisterns, hydrants or waterworks, or to purchase water for fire purposes; but it is contended by counsel for appellant that said section was repealed by an act concerning city and village organizations, approved March 4, 1893 (Sess. Laws 1893, p. 97).

The twelfth subdivision of section 2230 is as follows: "To prevent and extinguish fires, and for that purpose to have power to purchase fire-engines and to erect engine-houses, to purchase hose-carts, hose, hooks, ladders, trucks, buckets, ropes and all other apparatus, to maintain a fire department, to provide cis-

terns, hydrants, waterworks or to purchase water for fire purposes from others maintaining waterworks in such town or village in such manner as the trustees by ordinance determine."

The only provisions found in said act of March 4, 1893, concerning water, public wells, cisterns, reservoirs, etc., is found in the fifteenth subdivision of section 69 of said act and is as follows: "To establish, alter and change the channels of watercourses, and to wall them and cover them over; to establish, make and regulate public wells, cisterns, windmills, aqueducts and reservoirs of water, and to provide for the filling of the same."

The last-mentioned act is amendatory and supplemental to said title 13 of the Revised Statutes and repeals all acts or parts of acts in conflict with it. Said subdivision 12 of section 2230 is not in conflict with any of the provisions of the act of March 4, 1893. That being true, the question is presented whether said ordinance and contract are in conflict with said provisions of the Law of 1887 and of 1893.

After giving that question careful consideration, we have concluded that they are not in conflict with the law as it now stands, and that the board of trustees had full power and authority to enter into said contract as to the rate to be charged the village for water. Section 6, article 15 of our state constitution is as follows: "The legislature shall provide by law the manner in which reasonable maximum rates may be established to be charged for the use of water sold, rented or distributed for any useful or beneficial purpose."

Under the provisions of said section it is the duty of the legislature to provide by law the method or means by which rates or compensation for the use of water supplied to any city or town—which it is conceded the legislature has failed to do—unless it has been done by the provisions of said section 2711. That section applies to water and canal corporations and not to the case at bar. Therefore, until the legislature provides a method for fixing rates, the contract between the parties will govern.

We have not overlooked the act providing for the issue and sale of municipal bonds, approved February 17, 1893. (See

Sess. Laws, 1893, p. 34.)   In the enactment of the above-cited laws it is clear that the intention of the legislature was to provide laws whereby municipal corporations of this state may procure necessary water for fire and other purposes either by erecting systems or purchasing water from those having water systems available for that purpose.   It is not intended that a municipal corporation within this state should be left without the means of protecting its property from fire and the health of its citizens from contagious diseases until such time as it is wealthy enough to be able to construct and maintain a system of waterworks on its own account.   A contrary construction might deprive a municipal corporation of the means of self-preservation.

In *Andrews v. National Foundry & Pipe Co.*, 61 Fed. 787, 10 C. C. A. 60, the court said: "Besides the power to provide for the health of the inhabitants, the city of Oconto had the express power, apparently not brought to the attention of the court below, 'to provide for the erection of waterworks for the supply of water to the inhabitants of the city.'   We do not agree with the suggestion of the counsel that by this provision the city had no right to contract for a supply of water, and was authorized only to construct and operate a plant of its own. The authority extended to any reasonable method; and it follows that before the Oconto Water Company was incorporated, the city of Oconto, by its own charter, had power from the state to grant franchises like those in question to any person or body capable of receiving them."

And in case of *City of Newport v. Newport Light Company*, 84 Ky. 174, the court said: "The object sought to be accomplished must be considered, and being invested with the right to light its streets with gas, or to construct and maintain gasworks for that purpose, its right to contract under such power is unquestioned. . . . . It is the duty of the municipality to light its public streets and to furnish its inhabitants with the means of obtaining gas at their own expense, and having the power by legislative grant to erect and maintain gasworks for that purpose, it necessarily follows that it had the implied power to contract with others to furnish it in like manner;

and where there is a valid contract to that effect, we perceive no reason why it should not be enforced, or governed by the same rules applicable to contracts between natural persons."

Where a city or village is given power to establish a water system of its own, it would seem that it has power to contract with others for the establishment of a water system or to buy water for fire and other village necessities.    (See *City of Springfield v. Fullmer,* 7 Utah, 450, 27 Pac. 577.)

In case of the *Intendant and Town Council of Livingston v. Pippin,* 31 Ala. 542, the court said: "The intendant and council of the town of Livingston have the ordinary public powers which are conferred on municipal corporations.    The express grants of power are copied in the opening of this opinion. (The ordinary police, health and general welfare provisions.) Nothing is more important to a sanitary and police regulation than an abundant supply of water.    Its uses are too well known to require notice here.    We hold that the corporate authorities had the power, as such, to procure water on the public square of the town of Livingston.    If it be contended that the intendant and council should not have incurred the expense of an artesian well, but should have contented themselves with the cheaper modes of accomplishing the object, we answer that this question cannot be raised in this form.    The corporate authorities having the power to procure the supply of water, were themselves the judges of the mode and manner best calculated to accomplish the object.    (*Lawless v. Reese,* 4 Bibb, 309.)"    See, also, *Crawfordsville v. Braden,* 130 Ind. 149, 30 Am. St. Rep. 214, 28 N. E. 852, 14 L. R. A. 268; *Grant v. City of Davenport,* 36 Iowa, 402; *Warren v. City of Chicago,* 118 Ill. 329, 11 N. E. 218; *Harlem Gas & Light Co. v. New York,* 33 N. Y. 309.

Tiedeman on Municipal Corporations, section 175, says: "Under the authority commonly conferred by charter to make such ordinances and by-laws as shall be necessary for the security and welfare of the inhabitants and for preserving the health, order and good government, a city may contract for a water supply.    Sometimes such contracts are authorized by special laws, or by special provisions of the charter or by the general authority to make contracts, which are deemed neces-

sary for the municipal welfare. The large discretion which municipal corporations possess, in providing a water supply, under the comprehensive powers usually conferred will not, unless abused, be interfered with by the courts." (*Mauldin v. City Council*, 33 S. C. 1, 11 S. E. 432, 8 L. R. A. 291.)

It is held by many of the above-cited authorities that where the express power is granted to construct a system of waterworks or light plant, the municipality may accomplish that end by contracting with others to supply the municipality and inhabitants thereof with water or light. While such powers may be abused and improvident contracts made, anyone interested may resort to the courts and have illegal and extortionate contracts set aside.

It is clear to us from the above-cited provisions of our statute that the contract under consideration comes clearly within the powers of the village authorities. The length that said contract may continue is for thirty years and it is contended that it is invalid for that reason.

It is provided in section 2710, Revised Statutes, that no contract must be made with a corporation for supplying water for a greater period than fifty years. The legislature evidently did not consider fifty years was too long a period for such contracts to continue, and we think the contract under consideration was not void because of the provision for its continuance for thirty years. Under the ordinances authorizing said contract it is provided that the village may purchase said waterworks at the expiration of ten years; and even without that provision a purchase thereof might be made by the village.

While courts when called upon will scrutinize contracts of this kind with care, and having so examined the contract under consideration, conclude that it is valid under the law applicable thereto. Under the well-settled rule that where the constitutionality of a law is questioned the court will not pass upon it unless it is necessary to a decision of the case, we are not required to pass upon the constitutional enactment of law approved March 4, 1893, for the reason that the ordinances and contract in controversy are valid whether said act be held constitutional or not.

The counsel for the respective parties have filed over three hundred pages of printed briefs in this case, and have cited numerous authorities and decisions upon the many questions raised herein, all of which we have considered, but have concluded that it would not be necessary or of interest to the profession for us to pass upon each of the errors assigned in this opinion, and have therefore only set out our conclusions on the most important errors assigned. We find no error in the record sufficient to warrant a reversal of the judgment. The judgment is affirmed and costs awarded to the respondent.

Stockslager, J., concurs.

Ailshie, J., did not sit at the hearing and took no part in the decision, for the reason that he had appeared as attorney in the trial court.