[No. 25840. Department Two. September 30, 1935.]

THE STATE OF WASHINGTON, *on the Relation of M. C. Coulter, Plaintiff*, v. CLIFF YELLE, *as State Auditor, Respondent.*[1]

*E. J. Eagen*, for relator.

*The Attorney General* and *W. A. Toner, Assistant*, for respondent.

HOLCOMB, J.—Relator was employed by the state of Washington, in the capacity of a stenographer, during the month of July, 1935, through its duly authorized agent, the director of the department of agriculture. Her duties consisted in assisting the department of agriculture in the administration of chapter 78, Laws of 1935, p. 170, Rem. 1935 Sup., § 3035-1 *et seq*. The state agreed to pay relator at the rate of one hundred dollars per month for such services. That sum is the fair and reasonable value of such services. Relator acted conscientiously and in good faith in rendering such services for the state, at its special instance and

[1]Reported in 49 P. (2d) 465.

request. A duly executed voucher was submitted to respondent by relator, covering such services during July, 1935. July 31, 1935, respondent refused to honor such voucher and issue a warrant for the amount specified therein.

Subsequent to the decision of this court in *State v. Matson Co.,* 182 Wash. 507, 47 P. (2d) 1003, filed July 23, 1935, respondent requested an opinion of the *Attorney General* as to respondent's right to issue warrants to persons engaged in administering chapter 78, Laws of 1935, p. 170, Rem. 1935 Sup., § 3035-1 *et seq.* The *Attorney General,* in a written opinion, declined to authorize the drawing of such warrants until the matter had been submitted to this court for determination. In compliance with such opinion, respondent refused to issue a warrant to relator. She thereupon filed her petition alleging the foregoing facts and praying for a peremptory writ of mandate to compel the issuance of such warrants.

Respondent requested an opinion relating only to expenses occurring *after July 23, 1935,* apparently assuming that there was no question about the payment of salaries earned prior to that date. However, the *Attorney General's* opinion went much farther than requested and advised against the issuance of any warrants for the month of July.

Section 16 of chapter 78, Laws of 1935, p. 182, reads:

"There is hereby appropriated out of any money in the treasury of the State of Washington, not otherwise appropriated, the sum of one hundred and fifty thousand dollars ($150,000.00) to be available to the director for administrative expenses under this act, but in no case shall such expenses exceed the actual receipts from licenses heretofore or hereafter collected under this act or under chapter 12 of the Laws of the Extraordinary Session 1933-34." Rem. 1935 Sup., § 3035-16.

The *Attorney General* stated at the oral argument here that there remained about seventeen thousand dollars of fees collected from licensees in that fund.

Obviously, no ruling case can be found upon the question here involved. Relator contends that the decision in the *Matson* case, *supra,* is not yet final, because the remittitur has not been handed down, and all appropriations until that time can be used, even under a statute that has been declared unconstitutional. We do not consider the fact that the decision has not yet become final, important.

The *Attorney General* argues that, under our decision in *Drum v. University Place Water District,* 144 Wash. 585, 258 Pac. 505, and the cases there relied upon, declaring that an unconstitutional act is void *ab initio,* the appropriation in this matter is rendered void from the beginning.

We do not agree therewith. The *Matson* case, *supra,* and the two other cases previously decided by this court, *Uhden, Inc. v. Greenough,* 181 Wash. 412, 43 P. (2d) 983, and *Griffiths v. Robinson,* 181 Wash. 438, 43 P. (2d) 977, determined that the sections dealing with the delegation of power to the state director of agriculture, the governor and the Federal secretary of agriculture were void as an unconstitutional delegation of legislative power. The *Matson* case, *supra,* declared that §§ 2, 3, 7 and 19 of chapter 78, Laws of 1935, Rem. 1935 Sup., §§ 3035-2, 3035-3, 3035-7 and 3035-19, were also invalid as attempting to unconstitutionally delegate legislative power to those officers. As stated in the *Uhden* and *Griffiths* cases, *supra,* this court has always adhered to the principle that the legislature has power to regulate and license commission merchants, or other dealers in agricultural products, in the interest of proper inspection, to prevent evasion, fraud and imposition. It is also there

reiterated that only those matters that are directly involved in an act of the legislature are to be considered as being affected by the decision of the court. Section 21 of chapter 78, *supra,* p. 184, is much stronger than the usual saving clause. It reads:

"If any section, sentence, clause or part of this act is for any reason held to be unconstitutional, such decision shall not affect the remaining portions of this act. The legislature hereby declares that it would have passed this act and each section, sentence, clause or part thereof, irrespective of the fact that one or more sections, sentences, clauses or parts hereof be declared unconstitutional." Rem. 1935 Sup., § 3035-21.

There is nothing in § 16, *supra,* p. 182, Rem. 1935 Sup., § 3035-16, which constituted any unlawful delegation of legislative power. It was the ordinary appropriation section appropriating from the state general fund, restricted only by a provision that the expenses should in no case exceed the actual receipts from licenses theretofore and thereafter collected under either the former or the present act.

A case somewhat analogous in principle is *Shafford v. Brown,* 49 Wash. 307, 95 Pac. 270. This court had previously, in *State ex rel. Egbert v. Blumberg,* 46 Wash. 270, 89 Pac. 708, held a part of the act creating the office of county fruit inspector to be unconstitutional and void. Thereafter plaintiff began an action to recover damages for apples destroyed by defendants while assuming to act as county fruit inspector and state commissioner of horticulture. From an order of dismissal, he appealed. On appeal, he contended that the action of respondents in condemning and destroying this fruit was a trespass for which they must respond in damages to him as successor in interest to the then owner. We said:

"This contention cannot be upheld. Respondent Brown was acting in god faith under a statute of the

legislature. He doubtless supposed it to be a valid statute. The owners of the fruit evidently supposed the same. . . . the owners suffered no loss for which they could maintain an action."

In one of the cases cited by respondent, *Miller v. Dunn*, 72 Cal. 462, 14 Pac. 27, the principle was recognized that the right to use an appropriation to pay expenses incurred in good faith under an unconstitutional act should be upheld. In *Michigan Sugar Co. v. Auditor General*, 124 Mich. 674, 83 N. W. 625, 56 L. R. A. 329, 83 Am. St. 354, the supreme court had invalidated an act of the legislature providing that certain bounties should be paid to manufacturers in the state of sugar from beets grown in the state, on the ground that it authorized taxation for a private purpose. The case cited is distinguishable from the instant case because, as the court there said, the question previously raised was entirely different from the question in that case. In the later legislation, no specific appropriations were made by the act of 1899 by which the sugar bounties could be paid. In the later case, the court said:

"The question there raised was entirely different from the question here. Here no specific appropriations were made by the act of 1899 by which the sugar bounties could be paid, and the legislature has not recognized the relator's claim."

In the case before us, there is a specific appropriation from the state general fund which has not been exhausted. No special fund was established by chapter 78, *supra*. As the matter now stands, it is immaterial which fund is drawn against; it is all general fund, "not otherwise appropriated."

We appreciate the force of respondent's assertion that he and the state treasurer are under heavy bond and forbidden by law from authorizing the payment of

any money not lawfully appropriated. Respondent is, however, assuming a rather precarious position when he asserts the law is void *ab initio,* and that there is no appropriation by which money can now be paid out by him. If there never was a lawful appropriation, then the auditor should never have issued any warrants against it. Under that theory, it would be the duty of the *Attorney General* to bring an action against respondent for all the warrants heretofore drawn against the alleged appropriation.

That position, fortunately for respondent, is not correct. The appropriation is, in every sense, a valid appropriation from the general fund. The matter of its limitation under § 16, *supra,* p. 182, Rem. 1935 Sup., § 3035-16, is not now a thing with which the auditor is concerned. That limitation, according to his statement, has not yet been reached.

We conclude that the peremptory writ should issue. It is so ordered.

TOLMAN, BLAKE, and MAIN, JJ., concur.

GERAGHTY, J., concurs in the result.