GIBBS, Petitioner, v. BERGH, Respondent.

(214 N. W. 838.)

(File No. 6522. Opinion filed July 9, 1927.)

1. **Courts—Action in Nature of Quo Warranto to Determine Right to Office of Municipal Judge May Be Brought in Original Jurisdiction of Supreme Court; Right Involved Being Neither Private nor Local (Rev. Code 1919, § 2783, as Amended Laws 1919, c. 289, § 3).**

Original proceeding in nature of quo warranto, under Rev. Code 1919, § 2783, as amended Laws 1919, c. 289, § 3, may be brought in original jurisdiction of the Supreme Court to determine right to office of municipal judge, as between plaintiff and defendant, as against contention that right sought to be enforced is private or local.

2. **Courts—That Issues Must Eventually Be Decided by It May Properly Be Considered in Determining Whether Supreme Court Will Assume Jurisdiction in Original Action.**

That issues involved must eventually be decided by Supreme Court may properly be considered in determining whether that court will assume jurisdiction in an original action.

3. **Statutes—Statute Affecting Election of Municipal Judges in Municipal Corporations "Governed by a Board of Commissioners" Only Held Violative of Constitutional Requirement that Laws Relating to Courts Be of Uniform and General Operation (Rev. Code 1919, §§ 5207, 6328, 7212; Const. art. 5, § 34).**

Rev. Code 1919, § 6328, providing that in municipal corporations "governed by a board of commissioners" person receiving majority of all votes cast for office for which he is candidate shall be elected, and providing further for a secondary election where no candidate receives a majority, as applied to election of municipal judges (section 5207), held violative of Const. art. 5, § 34, requiring all laws relating to courts to "be general and of uniform operation throughout the state," in view of fact that it applies only to municipal corporations governed by board of commissioners and leaves cities having aldermanic form of government subject to Rev. Code 1919, § 7212, providing, "Except when otherwise * * * provided, * * * the person receiving the highest number of votes for any office shall be deemed to have been elected to that office."

4. **Constitutional Law—Constitutional Authority to Legislature to Act Is Subject to Other Not Inconsistent Provisions of Constitution.**

When Constitution authorizes Legislature to act, the authority conferred is subject to other provisions of the Constitution not inconsistent with the provision granting the authority.

**5. Constitutional Law—Candidate for Municipal Judge by Engaging in Secondary Election Held Not Thereby Estopped to Question Validity of Statute Providing for Such Secondary Election (Rev. Code 1919, § 6328, and § 2783, as Amended by Laws 1919, c. 289, § 3).**

Where two candidates for office of municipal judge in city having commission form of government, after failure of either to obtain majority of votes, participated in a secondary election, pursuant to Rev. Code 1919, § 6328, held unsuccessful candidate in such secondary election, and in a similar election at time of last preceding regular election did not estop himself from questioning invalidity of statute under which secondary election was held by proceedings in nature of quo warranto, under section 2783, as amended by Laws 1919, c. 289, § 3.

**6. Estoppel—There Can Be No Waiver Without Full Knowledge of Rights and of Facts Enabling Effectual Action to Prevent Infringement Thereof.**

Before one can be charged with a waiver of his rights, he must have full knowledge of such rights and of facts which will enable him to take effectual action to prevent infringement thereof.

**7. Estoppel—Where Waiver of Rights Would Be against Public Policy, There Can Be No Estoppel.**

There can be no estoppel, where waiver of rights would be against public policy.

**8. Estoppel — "Waiver" Requires Intentional Relinquishment of Known Right or Conduct Warranting Inference Thereof.**

To constitute "waiver" there must be an intentional relinquishment of a known right or such conduct as warrants inference of relinquishment.

**9. Courts—Where Statute Has Been Before Court Only Once and Then for Construction Only, Doctrine of Stare Decisis Did Not Require that It Be Sustained, as Against Subsequent Attack on Its Validity.**

Where statute has been before court but once and then only in a case involving its construction, the doctrine of stare decisis does not require court to sustain statute when its constitutionality is later attacked.

Note. — See, Headnote (1), American Key-Numbered Digest, Courts, Key-No. 207(6), 15 C. J. Sec. 550; (2) Key-No. 206 (17 1/16), 15 C. J. Sec. 550 (Anno.); (3) Statutes, Key-No. 74(2), 36 Cyc. 1012; (4) Constitutional law, Key-No. 50, 12 C. J. Sec. 168 (Anno.); (5) Key-No. 43(2), 12 C. J. Sec. 193 (Anno.); (6) Estoppel, Key-No. 54, Waiver, 40 Cyc. 259, 260; (7) Estoppel, Key-No. 52, 21 C. J. Sec. 199 (Anno.); (8) Estoppel, Key-No. 52, "Waiver," 40 Cyc. 262; (9) Courts, Key-No. 90(4), 16 C. J. Secs. 329, 341 (Anno.).

On the question of estoppel of electors or candidates to contest elections, see 9 R. C. L. 1174.

For procedure in quo warranto, see Bancroft's Code Practice and Remedies, Vol. 5, pg. 5365.

Original proceeding in the nature of quo warranto by Ransom L. Gibbs against Martin Berg to determine defendant's right to office of municipal judge in City of Sioux Falls. Judgment of ouster.

*T. M. Bailey* and *M. G. Luddy,* both of Sioux Falls, for Petitioner.

*Parliman & Parliman* and *Lyon, Bradford & Grigsby,* all of Sioux Falls, for Respondent.

BURCH, J. This is an original proceeding in the nature of quo warranto upon the following facts: The city of Sioux Falls is a city under commission form of government. At the regular city election held on the 19th of April, 1927, there were five candidates for the office of municipal judge, namely, Ransom L. Gibbs, Martin Bergh, H. L. Loffer, Christopher Sigler, and B. W. Phillips, and said election resulted in Gibbs receiving 1,824; Bergh, 1,140; Loffer, 814; Sigler, 534; and Phillips, 261, votes. As no candidate received a majority of all the votes cast for the office a secondary election under section 6328, R. C. 1919, was held on the 26th of April, with Gibbs and Bergh the candidates. At such election Gibbs received 3,041 votes and Bergh 3,097 votes. Bergh, having received a majority of the votes cast, was declared elected, and he thereafter qualified and entered upon the duties of his office. Gibbs, claiming that section 6328, R. C. 1919, is not applicable to the office of municipal judge and that the secondary election was therefore unauthorized and void, and claiming to have been elected to the office by virtue of the first election in which he received a plurality of the votes, tendered his oath of office and official bond on the 2d day of May, 1927, and demanded a certificate of election as the duly elected judge of the municipal court.

Plaintiff's position is that, where there are more than two candidates for the office of municipal judge in a commission governed city, a plurality of votes is sufficient to elect as in cities under the aldermanic form of government; that section 6328, pertaining to secondary elections in commission governed cities, has

no application to the office of municipal judge; and that, if said
section is intended to apply to the office of municipal judge, it is
unconstitutional and void as to that office, because of article 5,
§ 34, of the state Constitution.

Respondent, besides meeting the contentions of plaintiff, urges
that this court ought not to take original jurisdiction of this pro-
ceeding, and, as an affirmative defense, pleads that plaintiff, by
reason of his conduct, is estopped from asserting his right to the
office against defendant.

[1] On the question of original jurisdiction respondent cites
Everitt v. County Commissioners, 1 S. D. 365, 47 N. W. 296,
where it is said:

"That [the Supreme] Court will only exercise its original
jurisdiction to enforce a private or local right in special cases, or
where, for some perculiar reason, application cannot properly be
made to a subordinate court."

[2] He urges that the circuit court has jurisdiction to issue
the writ of quo warranto and to determine the issues raised by the
pleadings in this case and there is no urgent reason for this court
to act. It can hardly be said that the right to hold an important
judicial office is a private right, and, while the subject of this
action may be local in a sense, it involves an important office in
the largest city of the state. Two other authorities cited by de-
fendant (Oss v. Depositors' Guaranty Fund Commission, 48 S. D.
258, 204 N. W. 21, and Parson v. Smith, 48 S. D. 445, 205 N. W.
36) both involved clearly private rights to compel by mandamus
the allowance of private claims against the depositors' guaranty
fund. This case does not fall within the reason of any of those
cases. This court has jurisdiction, and, while we might justify a
refusal to take jurisdiction, where the circuit court is open to
plaintiff, on the ground that this court is overworked, we cannot
do so on the ground that the right sought is a private one. It is
by no means clear that the work of this court would be lessened
by a refusal to retain this action, as the questions are of such a
nature that they cannot be finally settled except by a court of last
resort. In White Eagle Oil & Refining Co. v. Gunderson et al.,
48 S. D. 608, 205 N. W. 614, 43 A. L. R. 397, we said where it is
apparent that the issues involved must eventually be decided by the
Supreme Court, that is a consideration that may properly influence

us in determining to assume jurisdiction in an original action, citing State v. Smith, 184 Wis. 455, 200 N. W. 65.

[3] On the merits the validity of the secondary election will be first considered and then the question of estoppel.

Section 7212, R. C. 1919, provides:

"Except when otherwise specially provided, in all elections for the choice of any officer, the person receiving the highest number of votes for any office shall be deemed to have been elected to that office."

This is a general provision of the election laws and is controlling, unless there is some other statute specially providing that a majority shall be required for the election of a municipal judge. It is claimed that there is such a statute applicable to this case, namely section 6328, which provides:

"In municipal corporations governed by a board of commissioners, if any person shall receive a majority of all the votes cast for the office for which he is a candidate, he shall be declared elected. In case no candidate shall receive such majority, there shall be held upon the Tuesday following such election a secondary election at which the only persons voted for shall be the two candidates receiving the highest number of votes at the first election. * * * The person receiving the highest number of votes at such secondary election shall be declared elected. * * * "

This section applies only to elections in cities under commission and purports to apply to all candidates at such election. In Rogers v. Walsh, 36 S. D. 599, 156 N. W. 88, this section, substantially the same as now, was held to apply to candidates for municipal judge in cities under commission government. But in determining that such section applied to candidates for municipal judge, this court considered section 7 of chapter 176, Laws 1909, providing for the election of municipal judges, by the electorate of the city in which the municipal court is established, and providing that:

"The result of such election shall be determined in the same manner in all respects as in the election of city officers."

From the above-quoted words it was concluded that in cities under commission government, where a majority was necessary to elect city officers of such city, a majority was also necessary to elect a municipal judge in said city. Since the decision in the

Rogers 'Case, section 7 of chapter 176, Laws 1909, has been amended and now appears as section 5207, R. C. 1919, reading:

"When the electors vote in favor of establishing such court, a judge thereof shall be elected at the first ensuing annual election and every four years thereafter, for a term of four years, commencing on the first Monday of the month following such election and until his successor is qualified. * * * "

That portion of the old law requiring "the result to be determined in the same manner in all respects as in the election of city officers" has been omitted. The section as it now stands was enacted in 1919 long after the decision in the Rogers 'Case and it is argued that this change evidences an intention of the Legislature to get away from the rule in the Rogers Case and to provide a uniform method of electing municipal judges, without regard to the form of the government of the city in which the election is held. There is some force to this argument when it is considered that section 6328 was held to apply to judges of municipal courts in commission governed cities largely because of the language of section 5207; but we cannot overlook the fact that section 6328 purports to apply to all candidates at the city election and no exception is made as to municipal judges. There is no necessary implication of an intent to change the effect of section 6328 as applied to the office of municipal judge in the Rogers Case and there is no inconsistency between the two statutes when so applied. We would hesitate to change the rule announced in the Rogers Case solely on the strength of the subsequent statutory amendments. But our attention has been called to article 5, § 34, of our Constitution, providing:

"All laws relating to courts shall be general and of uniform operation throughout the state, and the organization, jurisdiction, power, proceedings and practice of all the courts of the same class or grade, so far as regulated by law * * * shall be uniform. * * * "

[4]    Plaintiff says if section 6328 is to be construed as applying to candidates for judge of municipal courts to that extent, it conflicts with the above-quoted provision of the Constitution and cannot be sustained for that reason. This constitutional question was not raised or considered in the Rogers Case. There can be no doubt that the election of a judge is a step in the organization

of a court. Defendant points to article 5, § 23, an amendment to the Constitution adopted in 1906, authorizing the establishment of municipal courts, and in which it is provided "the judges whereof shall be chosen in such amnner as the Legislature shall prescribe," and argues that this later provision of the Constitution is controlling; that the Legislature has provided through section 6328 for the election of such judges by a majority vote in commission governed cities; and that such provision is expressly authorized by article 5, § 23, just quoted. But there is no inconsistency in the two provisions. The Legislature may comply with both by providing a uniform manner of electing such judges. When the Constitution authorized the Legislature to act, the authority conferred is subject to other provisions of the Constitution not inconsistent with the provision granting the authority. If all municipal judges were required to be elected by a majority vote, then as to that class of courts the law would be uniform, but not so where a judge of a municipal court in a commission governed city is elected in one manner and the judge of a municipal court in a city under the aldermanic system is elected in another manner. A municipal court in one city is of the same class as a municipal court of another city, irrespective of the classification of the city in which it sits. If defendant's contention be sustained, there would seem to be no reason why the Legislature might not have as many different methods of electing municipal judges as there are courts of that class. It seems plain that any statutory provision that destroys the uniformity of election of such judges violates article 5, § 34, of the Constitution.

[5]   On the question of estoppel respondent claims that plaintiff is estopped from asserting the invalidity of the secondary election, not only because he participated in it, but because he participated in an election in 1923 wherein the situation of the parties to this suit was reversed. A showing is made that at an election in 1923 there were four candidates, including Gibbs and Bergh, in the first election, where Bergh received a plurality of the votes at the first election. A secondary election was held with Bergh and Gibbs the only candidates and resulted in the election of Gibbs by a majority and Gibbs thereafter qualified and held the office for a term of four years.

[6, 7]   Respondent does not cite any authorities and we

know of none that hold a candidate estopped by reason of participation in a previous illegal or void election in no way affecting the present right to hold the office. Gibbs is not claiming a right to hold over, or in any way basing his claim in this action upon such former election. He claims right to the office by virtue of the first and only authorized election in 1927, wherein he received a plurality of the votes. Under such claim what happened at an earlier election is wholly immaterial. If plaintiff is estopped, it is because of his conduct in the elections of 1927. It has been held that irregularities in the conduct of·elections and in the nomination of candidates may be waived and a candidate may be estopped from asserting such irregularities, if he participated in the election without objection, and especially if he was a party to such irregularities. State v. Smith, 4 Wash. 661, 30 P. 1064. But before he can be charged with a waiver of his rights he must have full knowledge of his rights and of the facts which will enable him to take effectual action to prevent infringement of such rights, and there can be no estoppel where the waiver would be against public policy. McPhail v. People, 160 Ill. 77, 43 N. E. 382, 52 Am. St. Rep. 306; State v. Board of Canvassers, 78 S. C. 461, 59 S. E. 145, 13 Ann. Cas. 1133, 14 L. R. A. (N. S.) 850; State v. Barton, 58 Kan. 709, 51 P. 218; Elliott v. Burke, 113 Ky. 479, 68 S. W. 445.

Here the secondary election was wholly unauthorized and void. To allow the duly elected candidate to an office to consent to another and unauthorized election wherein another may be elected would be to permit candidates to call out the electorate at will and bandy an office between opposing factions whenever the candidates saw fit to test their strength. That would be clearly against public policy. It seems clear that a wholly unauthorized election cannot be made valid by waiver or consent of candidates.

But it does not necessarily follow that, because Bergh is not entitled to the office by virtue of the election under which he claims, he must be ousted and Gibbs seated. This is not an action by the state brought by the Attorney General or state's attorney, or by the state upon relation of any one. It is brought by Gibbs in his own name under the provisions of section 2783, R. C. 1919, as amended by chapter 289, Laws 1919, § 3. To maintain the action, Gibbs, as plaintiff, must show that he has a special interest,

namely, a right to the office. For that reason, we turn to a consideration of Gibbs' position in relation to the office without regard to the effect of his acts upon the rights of the state. If Gibbs has waived his right or estopped himself from claiming the office, this proceeding will be dismissed, although Bergh might be ousted in a suit by the state. Public policy need not enter into consideration, but Gibbs' acts must be measured by the rules governing estopped in pais as a party to an ordinary civil action. The general principles governing are well settled, although the cases are not numerous in which the subject of the action is the right to an office. Probably the principles must be the same whatever the right sought to be enforced may be, but we cite the case of Turnipseed v. Hudson, 50 Miss. 429, 19 Am. Rep. 15, which involves the right to office, and goes at some length into the question of estoppel. Turnipseed was elected to the office of chancery clerk in 1871 for a term of four years. In the spring of 1873 an act of the Legislature provided for another election and in the fall of 1873 Hudson was elected to the office. At a primary election preceding the general election, Turnipseed and Hudson were both candidates for nomination and both signed an agreement to abide the result of the primary. Hudson won out in the primary, Turnipseed respected his agreement, was not a candidate at the general election, and Hudson was elected, and Turnipseed turned the office over to Hudson.. Later the law under which Hudson was elected was held unconstitutional and Turnipseed sued to recover the office. It was held that Turnipseed was not estopped.

[8] None of the well-known elements of fraud upon which an estoppel in pais may be predicated are present in the care at bar. There were no false representations of fact made by Gibbs to Bergh upon which Bergh could have acted to his injury. The facts were as well known to one as the other. The mere acquiescence of Gibbs in the secondary election could not have misled Bergh to his injury, and without some act or concealment by Gibbs inducing Bergh to change his position or act to his injury there can be no estoppel. In view of the statute and the decision of this court in the Walsh Case, a secondary election was sure to be held. Nobody was misled by Gibbs' participation in such election and Bergh lost nothing by Gibbs' failure to announce that he would stand on the result of the first election. There is nothing upon

which to predicate an estoppel, nor is there any act or delay upon which to base a waiver. Gibbs acted promptly both in demanding a certificate of election and in presenting his oath of office and official bond. To constitute a waiver, there must be an intentional relinquishment of a known right, or such conduct as warrants an inference of a relinquishment of such right. 9 R. C. L. 1174, § 162.

[9] Respondent suggests that the doctrine of stare decisis should apply; that, this court having heretofore construed the statute and such construction having been acquiesced in for a long time unquestioned and without legislative action to change the rule, it ought not now to be changed, if erroneous. But we do not think the doctrine can apply where the statute has been before the court but once and that confined to a construction of the language of the statute, without regard to its constitutionality. The constitutionality of the statute is before us for the first time. To attempt an extended discussion of the doctrine of stare decisis would make this opinion too long and we will not attempt it.

Judgment of ouster must be entered, and it is so ordered.

CAMPBELL, P. J., and GATES, POLLEY, and SHERWOOD, JJ., concur.