(No. 6675.   November 18, 1939.)

H. ALBRETHSEN, Plaintiff, v. STATE, Defendant.

[96 Pac. (2d) 437.]

Ariel L. Crowley, for Plaintiff.

J. W. Taylor, Attorney General, E. G. Elliott and Lawrence B. Quinn, Assistant Attorneys General, for Defendant.

Fred M. Taylor and Maurice H. Greene, *Amici Curiae.*

GIVENS, J.—Plaintiff sues under article 5, section 10 of the Constitution for a recommendatory judgment to the legis-

lature, alleging in his complaint that he was employed by the Idaho Liquor Control Commission under 1935 Session Laws, chapter 103, page 222, as a special investigator to inquire into violations of said statute. That under such employment he worked six days during December, 1938, at a fixed wage of $5 a day. That in connection with his work and under the direction of the Idaho Liquor Control Commission he incurred expense of $7.37. That his claim for said wages and expenses was approved by the liquor control commission but disapproved by the State Board of Examiners as follows:

"Upon investigation, it was determined that the above four claimants are special investigators securing evidence for the Idaho Liquor Control Commission; however, no provision is made in the Idaho Liquor Control Act for the payment of such claims, and the same were therefore disapproved by the Board of Examiners."

And that on January 16, 1939, said board entered the following in its Book of Minutes:

"Upon investigation it was determined that the above 33 claims against the Liquor Control Act Fund are claims of special investigators securing evidence for the Idaho Liquor Control Commission; however, no provision is made in the Idaho Liquor Control Act for the payment of such claims, and the same were therefore unanimously disapproved by the Board of Examiners."

The complaint further alleges there was at all times in the liquor control fund sufficient money to pay such claims.

The attorney general on behalf of the State filed a general demurrer to the complaint, and in support thereof does not question the authority of the liquor control commission to have so employed plaintiff, stating:

" . . . . The complaint alleges and the demurrer admits that said services were rendered and said expenses incurred by the plaintiff as an employee of the Idaho Liquor Control Commission under the provisions of chapter 103 of the 1935 Session Laws, to the full extent said Act empowered said Commission to employ plaintiff and authorize the incurring of said expenses by him."

which feature we therefore need not further consider. The sole ground of defense is that chapter 103 of 1935 Session Laws is unconstitutional on various grounds.

It is axiomatic that one may not question the constitutionality of a statute unless it is being or is about to be applied to his disadvantage, or he will be injured by its enforcement. (*Utah Power & Light Co. v. Pfost,* 286 U. S. 165, 52 Sup. Ct. 548, 76 L. ed. 1038; *Washington Water Power Co. v. Coeur d'Alene,* 9 Fed. Supp. 263; *Iowa Life Ins. Co. v. Board of Suprs.,* 190 Iowa, 777, 180 N. W. 721; *Williams v. Baldridge,* 48 Ida. 618, 284 Pac. 203; *In re Allmon,* 50 Ida. 223, 294 Pac. 528; *In re Brainard,* 55 Ida. 153, 39 Pac. (2d) 769; *Twin Falls Canal Co. v. Huff,* 58 Ida. 587, 76 Pac. (2d) 923.) The State in this situation stands in no different position than any other litigant. (*City Council v. Board of Commrs.,* 33 Colo. 1, 77 Pac. 858; *State v. Roseberry,* 37 Ariz. 78, 289 Pac. 515; *Riverton Valley Drainage Dist. v. Board of Commrs.,* 52 Wyo. 336, 74 Pac. (2d) 871, 114 A. L. R. 1093; *State v. State Board of Equalizers,* 84 Fla. 592, 94 So. 681, 30 A. L. R. 362; *State v. Cage,* (Tex. Civ. App.) 176 S. W. 928.) A careful search of the State's briefs fails to disclose an assertion of legal injury to the State or a single case which has upheld a challenge of unconstitutionality of a statute by the State under a similar situation.

Furthermore the constitutionality of a statute will not be passed on unless essential to a decision of the case. (*Howell v. Board of Commrs. of Ada County,* 6 Ida. 154, 53 Pac. 542; *McGinness v. Davis,* 7 Ida. 665, 65 Pac. 364; *Jack v. Village of Grangeville,* 9 Ida. 291, 74 Pac. 969; *Mills Novelty Co. v. Dunbar,* 11 Ida. 671, 83 Pac. 932; *Logan v. Carter,* 49 Ida. 393, 288 Pac. 424; *In re Allmon, supra; Garrity v. Board of County Commrs.,* 54 Ida. 342, 343, 34 Pac. (2d) 949; *State Ins. Fund v. Board of Commrs.,* 54 Ida. 359, 34 Pac. (2d) 956; *Kimbley v. Adair,* 32 Ida. 790, 189 Pac. 53; *In re Brainard, supra.*)

The present action in no way directly involves any penal provision of the questioned statute and since the State has

successfully prosecuted,[1] and therefore taken advantage of some of the penal provisions it would seem clear it has not been and is not being in any way injured by the statute or its enforcement, not because it was successful in prosecuting under it, but because it has availed itself of the statute, and no penal provision, the unconstitutionality · of which is asserted, is argued or presented as disadvantageous to the State or its interests as a political entity. The State has disclosed no privity of interest with any person or corporation who might be affected personally, criminally or civilly, by enforcement of the statute or operations carried on under it.

Section 47 of the Act provides that:

"The Liquor Control Act Fund shall consist of all moneys derived from the sale of bonds as provided in this Act, and all revenues derived from alcoholic beverages, excise taxes, license, purchasers' permit fees, profits on original container sales, or other revenues resulting from the operation of this Act."

Section 45 covers the custody and. distribution of the fund as follows:

" . . . . All moneys appropriated for, accruing to or received by said fund are hereby appropriated for the purpose of this Act for the purchase of alcoholic liquors and payment therefor and of such other expenses of administration or other purposes as may be necessary to establish and operate State Liquor Stores and special distributors, and the same shall be paid out by the State Treasurer only upon state vouchers prepared and approved by the State Liquor Control Commission, certified to by the chairman of the commission and approved by the State Board of Examiners."

Section 48 governs the apportionment of the fund as follows:

"All moneys, properties, buildings, plants, apparatus, real estate, securities acquired by or through the moneys belonging to this fund, and of interest earned on moneys belonging

---

[1] *State v. Doolittle*, 58 Ida. 1, 68 Pac. (2d) 904; *Geist v. Moore*, 58 Ida. 149, 70 Pac. (2d) 403; *State v. Sawtooth Men's Club*, 59 Ida. 616, 85 Pac. (2d) 695; *State v. Conner*, 59 Ida. 695, 89 Pac. (2d) 197.

to this fund shall be the property of the Liquor Control Act Fund.

"Whenever, at the end of each quarter of the Fiscal Year of the State of Idaho, the moneys belonging to this Fund shall exceed the amounts provided for retention in the Fund by Section 46 of this Act, such excess shall be distributed as follows:

"Twenty-five per cent (25%) of such excess to the General Fund of the State of Idaho; twenty-five per cent (25%) to the Public Schools Income Fund; fifty per cent (50%) to the various counties of the state in the same proportion as the population of said counties bears to the total population of the state as shown by the last federal census; and provided, that of said fund so allocated to said counties, fifty per cent (50%) thereof shall be by the Board of County Commissioners apportioned to the general fund of said counties and the remaining fifty per cent (50%) shall be allocated to incorporated cities and villages situate therein in proportion as the population of such city and villages bears to the total population of the counties as shown by the last federal census."

The State is legitimately interested to see that no moneys are taken out of the fund except according to law because to do so would deplete the general fund's proportion. Likewise the State may to some extent, directly or indirectly, be thus affected by allocations to the public school funds, and perhaps, though it is unnecessary to consider to what extent, the amount going to the different counties and the therein included municipalities.

The court may take judicial notice of the reports of the various State officials and departments (sec. 16–101, I. C. A.). The Treasurer's Report for 1936–1938 shows, page 13, receipts into the Liquor Control Act Fund of $7,-514,979.02 and disbursements and transfers of $7,632,147.98, with a balance on September 30, 1938, of $184,896.45.

The Auditor's Report for the same biennium shows, page 35, a transfer from the Liquor Control Act Fund to the General Fund of $302,641.40 and from the Liquor Control Act Fund to the Public School Income Fund of $302,541.40, we take it this being each 25 per cent of the net, and on this

basis the total of these two funds, 50 per cent or $605,282.84, would have gone to the counties, thus close to a million dollars to the State or its legal subdivisions.

The Annual Report of the Idaho Liquor Control Commission, December 31, 1938, page 44, Schedule A–22, shows, as we understand it, totals since the enactment of the statute as follows:

| | |
|---|---|
| Total to Counties | $1,152,008.93 |
| To General Fund of State | 576,004.47 |
| To Public School Income Fund | 576,004.47 |
| Total Funds Distributed of | $2,304,017.87 |

The facts disclose the State has not only not been injured financially (which is the only phase involved herein, i. e., as to a recommendatory judgment) by the operation of the statute but in connection with the very gist of the suit herein, that is the liquor control fund, the State is being financially benefited. We thus have the anomalous situation of the State asserting its right to question the constitutionality of the act on the underlying basis of its being interested in safe-guarding the money received from the operation of the statute and at the same time having taken advantage of the statute since its enactment and yet asserting its unconstitutionality as preventing what it concedes would otherwise be a just claim. This is the essence of the State's position as shown by page 2 of the State's reply brief. In short the State in effect says it has received $576,004.47 into its own coffers under an unconstitutional statute but because the statute is unconstitutional the State will retain all of this unconstitutional money and refuse to pay what it admits is otherwise a just claim against it.

In actions for recommendatory judgments we resort to both law and equity and this does not appeal to us as fair-minded or equitable justice, conceding (which we do not, nor the contrary) that the statute is unconstitutional. (*United States v. Realty Co.*, 163 U. S. 427, 16 Sup. Ct. 1120, 41 L. ed. 215; *Guthrie Nat. Bank v. Guthrie*, 173 U. S. 528, 19 Sup. Ct. 513, 43 L. ed. 796; *Miller v. Dunn*, 72 Cal. 462, 14 Pac. 27, 1 Am. St. 67; *United States v. Cook*, 257 U. S. 525, 42 Sup. Ct. 200, 66 L. ed. 350; *Cincinnati Soap*

*Co. v. United States,* 301 U. S. 308, 57 Sup. Ct. 764, 81 L. ed. 1122; *State v. Yelle,* 183 Wash. 691, 49 Pac. (2d) 465; 101 A. L. R. 1414; *Deutche Bank Und Disconto-Gesellschaft v. Cummings,* 83 Fed. (2d) 554, 65 App. D. C. 297.)

The position of the State is too inconsistent even for it to assume and therefore since the State shows no injury under the statute in connection with the subject matter of this suit it may not question the constitutionality of the statute in this proceeding and we need not and do not pass upon its constitutionality in any respect. What rights the State or attorney general may have to question the constitutionality of this statute in other proceedings we do not now discuss or determine.

The employment of the plaintiff and the expense incurred by him not being otherwise questioned, we recommend to the next regular session of the legislature payment of the claims of the plaintiff together with legal interest thereon from the date of presentation to the board of examiners and their rejection thereof.

Budge and Morgan, JJ., concur.

Ailshie, C. J., concurs in the conclusion.

Holden, J., dissents.