No. 14,858.

FIFTH CHURCH OF CHRIST, SCIENTIST, in Denver, Colorado, *v.* PIGG & SON, INC.

(122 P. [2d] 887)

Decided February 2, 1942.    Rehearing denied February 24, 1942.

104

Mr. BENTLEY M. MCMULLIN, for plaintiff in error.

Mr. PERCY S. MORRIS, for defendant in error.

*En Banc.*

MR. JUSTICE BURKE delivered the opinion of the court.

THESE parties appeared in reverse order in the trial court and are hereinafter referred to as there. Others were originally joined who need not here be noticed.

Plaintiff sought a declaratory judgment holding its property improperly zoned under an ordinance of the City and County of Denver. Trial was to the court which granted the relief demanded. To review that judgment defendant prosecutes this writ. Others of the fourteen assignments are probably good, but for convenience and finality we limit ourselves to the contention that plaintiff was estopped by waiver and laches.

That question was properly raised and fully argued.

The charter amendment and original zoning ordinance now involved have heretofore been before us. *Colby v. Board,* 81 Colo. 344, 255 Pac. 443. Plaintiff's property was rezoned from "business B" to "residence D" by an amendatory ordinance and its position here is that as to said property said ordinance was arbitrary, unreasonable and confiscatory hence, as to it, unconstitutional. The prayer was for a declaratory judgment so holding "as to the said property owned by plaintiff."

The charter amendment authorizing the zoning ordinance was passed in May, 1923. A commission was appointed to prepare the ordinance. A draft of the act, a proper map of the city, and public hearings followed. This extended up to the middle of the summer of 1925, when Charles H. Pigg, now of plaintiff corporation, acting as agent for another, joined in a trust deed on part of said property. The following December he took title to a portion thereof. A mortgage was paid off and another executed. These parcels were conveyed to one Titus in 1926, and late in January, 1927, conveyed by him to plaintiff, then newly organized. Finally, title to the remainder of the tract passed to plaintiff, November 7, 1930. January, 1934, some question arose between these parties concerning plaintiff's proposed erection of a filling station on the property, which plan was abandoned on defendant's protest. In 1928 defendant built on its property, at an expenditure of almost $100,000. There is ample evidence that in so doing it relied upon the "residence D" zoning, nullification of which would result in very considerable depreciation. The complaint in the present action was filed January 27, 1939.

It thus appears that for approximately fourteen years the owners of the property here involved had entirely acquiesced in its zoning classification while others made large investments relying thereon which would now be materially depreciated by the proposed elimination of the status quo.

██ A constitutional right may be waived by acts or omissions. 12 C.J., p. 769, §190. True, it has been said that "no estoppel can arise under an unconstitutional * * * act." It is clearly apparent the statement is too broad. While it has been held that one may be estopped to question the constitutionality of an act infringing a private right "at least if no public rights or interests * * * are involved"; the exception has been put the other way, i.e., "When no property right is involved, and the question is purely political and administrative, individuals or parties that have seen the act in operation for years, and the affairs of state carried on under it, without offering objection or making protest, will not be heard at a late day to question its validity." 16 C.J.S., p. 182, §89; *State v. Howell,* 92 Wash. 540, 159 Pac. 777.

██ An examination of the cases will disclose that they appear to turn, not upon any loose generalization, but rather upon questions of public policy governed by the particular facts of each. Sometimes to permit the defense and sometimes to reject it would be an outrage on justice. Where, as here, the contention is, not that the act is unconstitutional per se, but only in its operation as applied to an individual under particular facts, it is clear, on reason and justice and supported by respectable authority, that he who claims injury must be reasonably diligent to protest, and that his long acquiescence upon which others have relied to their detriment bars belated action. "No principle has become more firmly established in the field of constitutional law than the fact that a person may effectively by acts or omissions waive a constitutional right to the protection of which he would otherwise be entitled, provided the waiver does not run counter to, public policy or public morals. This is nothing more than the equitable doctrine of estoppel applied in the realm of constitutional law and is uniformly upheld in cases where the constitutional provision is solely protective of property rights." *Wilson v. School Dist.,* 328 Pa. 225, 244, 195 Atl. 90, 100.

We have heretofore clearly indicated our aherence to this rule. *Colby v. Board, supra.*

The judgment is reversed with directions to dismiss the action at plaintiff's costs.

Mr. Justice Jackson not participating.

*On Petition for Rehearing.*

Mr. Justice Hilliard, who formerly concurred in the opinion, now dissents.