FITZSIMMONS et al. v. RAUCH et al.

No. 31264. May 22, 1945.

Rehearing Denied June 12, 1945.

*159 P. 2d 264.*

Geo. A. Fitzsimmons, of Oklahoma City, for plaintiffs in error.

Holley, Douglass, Felix & Douglass, of Oklahoma City, for defendants in error.

BAYLESS, J. Mamie C. Fitzsimmons, claiming to be the owner, and George A. Fitzsimmons, her former husband, and W. Combs Hughes, claiming to be a mortgage holder on the property involved, instituted an action in the district court of Oklahoma county against L. M. Rauch, who had applied for a tax deed on the property, and Wm. F. Vahlberg, county treasurer, for an injunction against the issuance of said tax deed and for other relief, and appeal from a judgment adverse to them. The trial court denied the application for temporary injunction. The tax deed was issued. Thereafter the pleadings joined issue on the matter of canceling the tax deed.

The evidence in the case discloses that the city of Oklahoma City, acting under authority of the statutes then existing, created a paving district that included the lot in question in the year of 1911 and issued bonds to be paid by the special assessment levied against the lot. The special assessments against this lot were not paid, and Oklahoma City in the year of 1930, acting under authority of ch. 93, S.L. 1927, reassessed this lot along with other properties and again levied special assessments for the payment of the bonds so issued. The last of the special assessments under this reassessment were due in 1939. In 1939, at the annual sale the county treasurer offered this lot for sale and sold it for the 1939 installment, and the purchaser thereupon had indorsed thereon the delinquent installments for the prior years. Thereafter a notice, dated December 22, 1941, of intention to apply for a tax deed was served upon the plaintiffs, and thereafter a tax deed was issued by Vahlberg, county treasurer, to Rauch.

In seeking to cancel this deed the plaintiffs contended that the original paving district was illegally created and the assessment thereof did not constitute a charge or lien against this property. They further contended that the

special assessment attempted to be created thereby, even if valid, had expired by reason of statute of limitations and laches. They contended there was no authority under the Act of 1927 for reassessment and that said act was unconstitutional. They further contended that the notice of intention to apply for a tax deed was not served in the manner required by law. All of these contentions were overruled by the trial court in rendering judgment for the defendants, and the plaintiffs re-present them on appeal.

The first contention presented by plaintiffs raises a question under 68 O.S. 1941 § 451, concerning the validity of the notice of intention to apply for the tax deed that was served upon them in this case. They call attention to the fact that the notice was signed "L. M. Rauch by John H. Halley, his attorney," whereas the language of the statute is " . . . he shall cause a written notice signed by himself to be served upon the owner of the land . . ." Relying upon Carl v. Stith, 153 Okla. 16, 4 P. 2d 738, and upon other cases that are not in point, plaintiffs contended that the notice in this case is defective and invalid because it was not signed by Rauch. In Carl v. Stith, supra, the notice was signed by the owner of the tax sale certificate and what we said therein was not said for the purpose of determining the issue we have before us. Upon consideration of the authorities cited we are unwilling to hold that the language of the statute quoted above must be literally applied. The instances in which a person may authorize his signature to be signed to notices by agents, attorneys in fact, or attorneys at law are so numerous that there is no occasion to set them out; and the many instances in which modern courts bind persons in the position of Rauch by their signatures affixed by others on the basis of agency or the relationship of attorney and client are so numerous as to render unnecessary a literal application of the above language except in the gravest of circumstances. In this occasion Rauch is in court standing upon the signature affixed to this

notice by his attorney, and we can conceive no prejudice that could arise to the plaintiffs by virtue of the particular signature in this instance and the manner in which it was attached.

An attack is also made upon the service of the notice upon Mrs. Fitzsimmons and Hughes. The return of the deputy sheriff who served this notice is regular on its face. In the instance of Mrs. Fitzsimmons, she undertook to show by witnesses that while she and Mr. Fitzsimmons are divorced, they live in the same house, and that the service of this notice upon her was made by offering the copy to Mr. Fitzsimmons, who refused it, whereupon it was dropped in the door of her home.

The return of an officer showing the manner in which he served it imports verity but is subject to attack by evidence showing the contrary. The trial court chose to sustain the service in this case because of all the conditions surrounding it, and we affirm the same, especially in view of the fact that Mrs. Fitzsimmons has not undertaken to show any prejudice to her, and the fact that she instituted this action indicates that the notice came to her attention and she was able to file the action for the protection of her rights before the deed was issued. In the instance of Mr. Hughes, he undertook to show that he is a widower and that at the time he was being visited by his adult daughter, who is married and resides away from his home, but who was present on the day the notice was served and received the same from the sheriff. As stated before, the sheriff's return is regular on its face and imports verity, and we are unwilling to hold that the trial court erred in sustaining the service of this notice.

The next contention presented involves the regularity and validity of the proceedings of the city council by which the paving district was created and the special assessment levied and the bonds issued in 1911. Plaintiffs undertook to show that these proceedings were defective in that the resolution of neces-

sity, preliminary estimates, the assessments made by the appraisers, and other steps were omitted or invalidly done by the city council. A portion of the records of those proceedings was introduced by the plaintiffs. On cross-examination it was elicited from the witnesses that while the records now in possession of the city officials appeared to be incomplete, no thorough search had ever been made, and that the officials testifying had produced in court only what they had been requested to bring. In other words, this cross-examination cast so much doubt upon the plaintiffs' contention that no such records had ever existed, and largely made it to appear that it was an instance of failing to call for or to have produced the right record, that the trial court was justified in rejecting their contention as being unproven. In addition to this, as Rauch points out, the other objections made to so-called defects or irregularities in the resolution of necessity and the ordinances later adopted are of a type that are waived by the property owners in the district affected unless the property owners object or protest within a specified time. As pointed out in Roberts v. City of Sapulpa, 115 Okla. 243, 242 P. 553, and other Oklahoma cases, the resolution of necessity and the following steps conferred jurisdiction even though they may be defective in detail. The trial court correctly overruled this contention.

It is next contended that even if the assessment under the proceedings of 1911 were valid and did create a lien on this property, that 18½ years elapsed before the refunding or reassessment proceedings were undertaken and this lapse of time was sufficient to destroy the lien thus created by application of the statute of limitation or laches. In support of this plaintiffs have cited Board of Educ. v. Johnston, 189 Okla. 172, 115 P. 2d 132, and City of Bristow v. Groom, 194 Okla. 384, 151 P. 2d 936. These cases are not helpful to the plaintiffs. The first case was also cited and relied on in Mefford v. Oklahoma City, 195 Okla. 45, 155 P. 2d

523. We pointed out in our decision in that case that differences between the duties of citizens and municipalities in these respects based upon the sharp and strict constitutional and statutory requirements and limitations in the fiscal management of municipal affairs fully differentiated the two. The Bristow case, supra, involved the foreclosure of the lien for special assessments by court action, and our language dealing with the right to collect through sale by the county treasurer and the right to foreclose by court action carefully differentiated between the two; and, because of the precise issue involved, we limited our decision to the extent of the lien and the accrual and loss of the remedy of foreclosure by court action and avoided authoritative discussion of the extent and life of the lien and the remedy to collect through sale by the county treasurer. There is nothing in either opinion to indicate that we were holding that the lien for special assessments and the right to sell through the county treasurer were lost through then existing statutes.

This court has recognized the applicability of the statute of limitations governing actions generally to actions to foreclose the liens of special assessments. City of Bristow v. Groom, supra, and other cases following it. However, plaintiffs have not cited any statute of limitations applicable to the right to sell through the county treasurer, nor have they cited any applicable authority for the application of the rule of laches. Our discussion of this issue in Mefford v. Oklahoma City, supra, fully covers and governs this issue in this case.

It is next urged that ch. 93 of the Session Laws of 1927, authorizing the reassessment, is unconstitutional. It is urged that this act is unconstitutional because of the assertion that a number of additional conditions or burdens are imposed upon the property owners in the initiation and carrying out of the reassessment which are prejudicial to the property owners' rights. Specifically, it is urged that this act is uncon-

stitutional in view of art. 5, sec. 52, Oklahoma Constitution, prohibiting, among other things, the revival of any right or remedy which may have been barred by lapse of time; and art. 2, sec. 32, Constitution of Oklahoma, prohibiting monopolies and perpetuities. The contention that additional burdens or conditions were imposed to the prejudice of the property owners has been answered in the negative in McGrath v. Oklahoma City, .156 Okla. 34, 9 P. 2d 711; Thompson v. Houston, 170 Okla. 195, 39 P. 2d 524; Evans v. Norvell, 99 Okla. 248, 226 P. 573; and Custer County v. City of Clinton, 49 Okla. 795, 154 P. 513. In view of what we have said above in answer to the contention that the right and remedy created with the paving district in 1911 had expired by limitation, it is clear that the contention that the Act of 1927 violates art: 5, sec. 52, supra, is without merit. We held that the right and the remedy had not expired, and since this is true, it follows that the Act of 1927 cannot be construed as a revival thereof. Plaintiffs cite no authority and make no argument in support of the contention•that perpetuity or monopoly is created or authorized by the Act of 1927. We treat that particular issue as having been abandoned. As pointed out by Rauch, the Act of 1927 has withstood one previous attack upon its constitutionality, McGrath v. Oklahoma City, supra, and has been uniformly relied upon and applied in this state. This is a premise to Rauch's argument that Fitzsimmons and his successors in interest are estopped to question the constitutionality of this act by virtue of Fitzsimmons' act of invoking its aid and obtaining benefits thereunder. The record discloses that Fitzsimmons was one of the active initiators of the reassessment program and particularly so because of the fact that a considerable reduction in the amount then due against his property was made in the reassessment. Ordinarily, this court is cautious in applying the rule of estoppel against an individual pleading the unconstitutionality of an act of the Legislature. This is done to preclude the likelihood of overlooking a question of public importance. However, when the constitutional right being urged is one of particular and specific application to the party urging it in the particular case, and the rule of estoppel is susceptible of application in the specific instance without prejudice to the general public good in the construction of our Constitution and can be applied in line with the general rules of law governing the subject of estoppel, this court has not hesitated to estop an individual from asserting the unconstitutionality of an act which he has invoked or relied upon to his advantage. See the following cases: Southern Okla. Power Co. v. Corporation Commission, 96 Okla. 53, 220 P. 370; Foley v. State, 157 Okla. 202, 11 P. 2d 928; Pierce Oil Corp. v. Phoenix Refining Co., 79 Okla. 36, 190 P. 857. It is to be noticed that this last case was appealed to the Supreme Court of the United States and the rule announced therein by this court was approved, 259 U.S. 125, 66 L. Ed. 855.

The fifth ground urged is that the court erred in denying the relief required and in overruling the motion for new trial. It therefore only involves a representation in summary form of the matters heretofore presented and discussed. There is no occasion to discuss them further.

. The judgment appealed from is affirmed.

HURST, V.C.J., and RILEY, OSBORN, WELCH, CORN, DAVISON, and ARNOLD, JJ., concur.